THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID L. DAVIS, Defendant-Appellant.

Fourth District   No. 4—90—0093

Opinion filed October 25, 1990.

McCULLOUGH, J., dissenting.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

On September 19, 1989, in the circuit court of Champaign County, defendant David L. Davis entered a guilty plea to the offense of burglary. (Ill. Rev. Stat. 1989, ch. 38, par. 19—1.) He subsequently received an extended-term 10-year prison sentence. On December 1, 1989, defendant filed a motion seeking to withdraw his guilty plea, which the court denied. Defendant now appeals this denial.

Defendant was originally charged with the offenses of residential burglary and burglary. On September 19, 1989, he pleaded guilty to the burglary offense and the other charge was dismissed. There was no agreement as to the sentence to be imposed. Defendant was admonished pursuant to the requirements of Supreme Court Rule 402 (107 Ill. 2d R. 402). He was also advised, pursuant to the request of the State, of the possibility of an extended-term sentence. At the con-

clusion of the plea, defendant requested, and the court so ordered, that an evaluation of defendant's acceptability into its program be prepared by the Treatment Alternatives to Street Crimes (TASC) organization.

At the sentencing hearing, defense counsel· moved for continuance. He explained that prior to the guilty plea a TASC representative informed him that if defendant received a conviction for burglary rather than residential burglary, he would be eligible for the program. However, just recently the representative called back and informed him that defendant, due to his prior criminal record, was in fact not eligible for the program. Counsel sought an extension of time to discuss this change of circumstances with the State. The court denied the motion and the 10-year sentence was.imposed.

Defendant then filed a motion to withdraw his guilty plea based on this misunderstanding. At the hearing on the motion, defense counsel recounted the circumstances and supplied the letter from TASC initially indicating defendant was approved for the program. He then explained the reason behind the plea to the less serious charge was that this would allow the defendant to ask the court to place him with the TASC program. The State acknowledged that the counsel's explanation as to what happened was accurate. Defendant contended that since the purpose of his plea, to ask for placement with TASC, had been frustrated through no fault of his, he should be allowed to withdraw his guilty plea. The court denied the motion, and this appeal followed.

■■ ■ The general rule is that it is within the sound discretion of the trial court to determine whether a guilty plea may be withdrawn and, on appeal, this decision will not be disturbed unless the decision is an abuse of that discretion. (*People v. Benedetto* (1981), 102 Ill. App. 3d 10, 16, 428 N.E.2d 1169, 1175; *People v. Tarbill* (1977), 47 Ill. App. 3d 286, 287, 361 N.E.2d 1178, 1179.)

> "Where it appears that the plea of guilty was entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority, or the case is one where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, or where the ends of justice will be better served by submitting the case to a jury, the court should permit the withdrawal of the plea of guilty and allow the accused to plead not guilty." (*People v. Morreale* (1952), 412 Ill. 528, 531-32, 107 N.E.2d 721, 723.)

In the case of a defendant's .mistaken subjective impressions, it is es-

tablished that these mistaken impressions, in the absence of substantial objective proof showing they were reasonably justified, do not provide sufficient grounds on which to vacate a guilty plea. (*People v. Hale* (1980), 82 Ill. 2d 172, 176, 411 N.E.2d 867, 868.) The burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression. *Hale*, 82 Ill. 2d at 176, 411 N.E.2d at 868.

■ In the case at bar, we conclude defendant has met his burden. While the court was not informed of it at the time of the plea, it is now acknowledged by all parties that the purpose of the plea arrangement was to let the defendant plead guilty to the lesser offense, allowing him to ask for placement with TASC while the State could seek an extended-term prison sentence. It is equally clear that defendant was initially advised by counsel and TASC that he was eligible for the program; and it was not until after consummation of the plea that he found out otherwise.

It is also evident defendant's misapprehension at the time of the plea prejudiced him. He pleaded guilty to burglary, which is a Class 2 felony (Ill. Rev. Stat. 1989, ch. 38, par. 19—1(b)) and, due to his prior 1982 armed robbery convictions, had become a nonprobational offense requiring imprisonment. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(2)(F).) Thus, at the time of the plea, it appeared defendant was facing two alternatives: (1) prison, or (2) alternative placement with TASC pursuant to the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1989, ch. 111½, pars. 6351—1 through 6362—3). Once this latter alternative was removed by TASC, the only option was imprisonment. This is not the arrangement defendant had bargained for.

We recognize, as stated in the dissent, that the trial court's admonishments were accurate, complete, and well beyond that which was required. We also recognize that defendant stated no promises had been made to him. Admittedly, there was no guarantee at the time of the plea that defendant would be placed with TASC. Even if he were eligible, the court could have, and very well may have, still sentenced defendant to prison. Most likely defendant had this uncertainty in mind when he said no promises had been made and at that time did not think of the representation concerning his eligibility. However, defendant had realistically anticipated that he would be able to request this relief when he entered his plea. We conclude that under the circumstances of this case the ends of justice would be better served by allowing defendant to withdraw his guilty plea.

In reaching this conclusion, we are also mindful of an apparent

defect in the guilty plea admonitions. At the time of the plea, the court advised defendant that the possible dispositions on his burglary conviction would range from probation to an extended-term sentence. Normally, this is correct. However, as noted earlier, due to defendant's prior criminal record, he could not receive probation. The only exception would be placement with TASC. (See *People v. Pearson* (1989), 183 Ill. App. 3d 72, 538 N.E.2d 1202; *People v. Tucker* (1989), 183 Ill. App. 3d 333, 539 N.E.2d 243.) The court, being unaware of defendant's prior criminal record and the understanding that defendant would seek placement with TASC, did not explain the mandatory prison sentence and the limited probation available through TASC. Thus, there seems to be a question if defendant properly understood the possible penalties at the time of the plea.

Accordingly, we conclude that defendant has established he was operating under a misapprehension of fact at the time he entered the plea and the court erred by refusing to allow him to withdraw it.

Reversed and remanded.

GREEN, J., concurs.

JUSTICE McCULLOUGH, dissenting:

One definition of dissent is not to approve and I strongly disapprove of the findings of the majority.

The essential part of the defendant's motion to withdraw his plea of guilty states:

> "If defendant had been informed that he did not qualify for TASC, he would not have pled guilty for an open sentence on September 19, 1989."

Regardless of the statements of the TASC worker, defendant should be charged with knowledge of the law, that he was not eligible. The trial court had no responsibility or obligation to give any credence at all to the agreement between the State's Attorney and the defendant. The State's Attorney and the defendant, according to the record, agreed that the State would drop the residential burglary charge, the defendant would plead guilty to the burglary charge, the State could argue for an extended term, and the defendant would apply for TASC. The record shows the State dismissed the residential burglary charge, the defendant pleaded guilty to burglary, the defendant was fully admonished as to the consequences of his plea, and admonished as to extended term. Neither the prosecutor nor defendant told the trial court that defendant's

*qualification* for TASC was a part of the agreement. As shown, the trial court twice requested the terms of the agreement. The court accepted the plea, set the sentencing hearing and, per defendant's request, referred the matter to TASC. At this point, any purported agreement had been fulfilled.

It is first necessary to point out that this case does not involve a trial judge who perfunctorily went through the Supreme Court Rule 402 admonishments (107 Ill. 2d R. 402). The trial court spent an extended amount of time going through the rights of the defendant under Supreme Court Rule 402 and the admonishments with respect to his plea of guilty.

During the admonishment of the defendant, the trial court asked the prosecutor "the posture of the case." The prosecutor responded:

"Your Honor, it was my understanding the Defendant would tender a plea of guilty to the charge of Burglary, alleged as a lesser included Class II felony, that would be set forth on sentencing, and we would dismiss Count II. There were no agreements as to the disposition, and we were requesting that the Court admonish the Defendant as to the extended-term."

The trial court then asked defendant's attorney:

"Is that your understanding of the posture of the matter, Mr. Kuehl?"

The defendant's attorney's answer was:

"It is, Judge."

The trial court then stated to defendant:

"What I am going to do now is explain to you the rights that you have. I will ask the lawyers to describe again in a few moments, what they believe any agreement may be. And, I am going to ask you a series of questions to determine whether I think you understand the charges and the possible penalties and any plea agreement, and your rights. And, I want you to understand it is absolutely essential that you, in fact, do understand everything which occurs during these court proceedings before you make any offer to plead guilty. If there is anything you do not understand, you make sure you ask questions. Do not plead guilty unless and until you do understand everything which occurs here."

After thoroughly admonishing the defendant of his rights, the trial court then stated:

"Now, again, I remind you if there is anything you don't un-

derstand about my explanation of your rights, or if there's anything you don't understand here today, ask questions. Do not plead guilty unless and until you do understand everything that is happening."

Thereafter, the court again asked counsel:

"[W]hat is the agreement in this case?"

The prosecutor again responded:

"Your Honor, in exchange for the Defendant's offer to plead guilty to the charge of Burglary, the lesser included Class II felony contained in Count I of the indictment, the State has agreed to dismiss Count II, and this will be for an open sentencing."

Once again, the court asked defendant's attorney:

"Is that your understanding, Mr. Kuehl?"

And defendant's attorney responded:

"It is, Judge."

The court again addressed the defendant stating to him:

"Now, as I understand it, Mr. Davis, the State and your lawyer have agreed that they will recommend to me that Count II be dismissed if you plead guilty to Burglary, a Class II felony, which is a lesser included offense of the offense charged in the indictment in this case. And, other than that, no other representations as to a possible sentence have been made to you. Is that accurate?"

To which the defendant responded:

"Yes, your Honor."

The trial court then told the defendant that the matter would be referred to the court services for a presentence report and stated to the defendant:

"Now, did anybody promise you anything different from what I have just described to you in order to get you to plead guilty?"

And the defendant responded:

"No, sir, your Honor."

The trial court then stated:

"Now, do you understand I can impose any sentence provided for by statute, including, if you qualify for the extended-term, any term of imprisonment up to that maximum possible extended-term sentence I described to you a few minutes ago?"

And the defendant responded:

"Yes, sir."

The trial court then asked:

"[D]id anybody force you or threaten you to get you to plead

guilty here today, Mr. Davis?"

And the defendant responded:

"No, sir."

The court again stated:

"Again, did anybody promise you anything different from the agreement which was described by the lawyers?"

And the defendant responded:

"No, your Honor."

The State then presented the basis for the plea of guilty and the court again with respect to the defendant asked:

"Do you have any question at all about the rights you have in connection with this case?"

And the defendant responded:

"No, sir, your Honor."

The court then asked:

"Do you have any question at all about the charges against you or the possible penalties?"

And the defendant responded:

"No, your Honor."

Next the court asked:

"Do you have any question at all about what will happen if I accept your plea of guilty today and in the future, in order to determine your sentence?"

And the defendant responded:

"No, your Honor."

The court then asked:

"Is there anything at all about these court proceedings you don't understand?"

And the defendant responded:

"No."

The court again asked:

"Is there anything about the case or the court proceedings about which you want to ask questions?"

The defendant responded:

"No, sir."

At the close of the hearing, the court referred the matter to the Champaign County court services department for a presentence investigation and the defendant's attorney then stated:

"Judge, I will also request a TASC evaluation and an IPS suitability report also be prepared."

The court in response stated:

"I will order that an evaluation by TASC be conducted and a

report made, and an intensive probation suitability report be provided."

At the sentencing hearing, when the question of defendant's qualification for TASC came up, the trial court asked the defendant's attorney:

"Was your client's—the condition of your client's qualification for TASC a part of the plea agreement that was articulated at the time he entered his plea of guilty, without going back over all of the—."

The defendant's attorney responded:

"Your Honor, no, I don't believe it was. I don't think we stood in front of your Honor and said, 'By the way'—what I am saying is that that was the basis of the negotiations and that was the understanding that was communicated to my client."

The defendant was not a novice to the judicial system and had a record of several convictions and violations. He does not deny his guilt. As pointed out heretofore, the trial court meticulously admonished defendant with respect to all of his rights as to any agreements. The defendant should not now be able to make a charade of the court proceedings. He was clearly admonished, told the court there were no promises made, and should not be allowed to have his plea of guilty set aside. If the plea in this case, which shows the trial court's conscientious and thorough effort in admonishing the defendant, is not allowed to stand, then I perceive of no case where a defendant cannot do what is being attempted by the defendant here.

Concerning advising defendant of his right to elect treatment, this court has been firm in stating there is no error when a trial court fails to inform a defendant where it is clear defendant is aware of the right. (*People v. Turner* (1985), 131 Ill. App. 3d 994, 476 N.E.2d 766.) There also was no error by the trial court in admonishing defendant as to the range of penalties.

Finally, the defendant was disappointed in the extended-term sentence. The record shows he wanted to have a second bite and renegotiate. As stated in *People v. Hale* (1980), 82 Ill. 2d 172, 176, 411 N.E.2d 867, 869:

"[T]here is no allegation that the defendant has a valid defense, or that any other factors are present which would, in the ends of justice, require a finding of error."

The trial court should be affirmed.